666 So.2d 452 (1995)
CASINO MAGIC Corporation; Grand Casinos, Inc.; Mississippi Gaming Commission; Stuart C. Irby, Jr., Chairman; W.W. Gresham, Commissioner; Robert C. Engram, Commissioner; Paul Harvey, Executive Director; and Mike Moore, Attorney General
v.
Terryl M. Ladner and Terry's Seafood, Incorporated.
NO. 94-CC-00299-SCT.
Supreme Court of Mississippi.
November 30, 1995.
*453 Michael C. Moore, Attorney General; Carole Brand Edds, R. Stewart Smith, Jr., Sp. Asst. Attorneys General; R. David Kaufman, Brunini Grantham Grower & Hewes, Kathryn H. Hester and Thomas B. Shepherd, III, Watkins Ludlam & Stennis, Jackson, for Appellants.
Mack Cameron, Jackson, for Appellees.
Before HAWKINS, C.J., and SULLIVAN and JAMES L. ROBERTS, Jr., JJ.
JAMES L. ROBERTS, Jr., Justice, for the Court:

INTRODUCTION
This case deals primarily with the appealability of a denial by the Mississippi Gaming Commission of a site proposed by a Mississippi landowner seeking gaming approval for his land. The Mississippi Gaming Commission denied the appellants' site request but was reversed by the Hancock County circuit court. We find that the Mississippi Gaming Commission acted within its statutory parameters and accordingly reverse and render the circuit court's ruling, finding that it lacked jurisdiction under these facts. We also find that the lower court's denial of the attempted intervenors' request for intervention, which was appealed by Grand Casino and Casino Magic, should be dismissed as we find that the trial court originally lacked jurisdiction over the merits of the case which naturally encompasses the trial court's jurisdiction to hear the intervention motion. Accordingly, this case is reversed and rendered in part and dismissed in part.

STATEMENT OF THE CASE
This case began procedurally on December 17, 1990, when Bay St. Louis attorney Joseph W. Gex, on behalf of Terryl M. Ladner and Terry's Seafood, Inc. (hereinafter "Ladner"), requested the Mississippi State Tax Commission (formerly performing the duties of the Mississippi Gaming Commission, hereinafter "MGC") to determine whether Ladner's Bayou Caddy property on the Mississippi Gulf Coast was a legal site for gaming under the Mississippi Gaming Act. Mark T. Smith, Senior Enforcement Agent for the Gulfport Alcohol Beverage Control Division of the Mississippi State Tax Commission, performed an on-site inspection of Ladner's property, reviewed USGS maps of the area, and decided on December 31, 1990, that the site was not lawful because it was in a bayou where cruise ships were not permitted under MGC Regulation No. 2. The Interim Executive Director of the MGC, Lester Herrington, recommended and was concurred with by the MGC's unanimous vote on January 3, 1991, that the site was not lawful but that a hearing would be available if requested within fifteen days.
After additional evidence was provided by Ladner's expert, Dr. Ervin G. Otvos, who alleged that the Ladner property is the westward extension of the Mississippi Sound due to natural geological formations occurring over the last three thousand years, and site inspections were performed by MGC officers, the MGC January 3, 1991, decision was reaffirmed by unanimous vote on October 30, 1991. Aggrieved by the MGC's affirmance, Ladner filed a petition for review on November *454 27, 1991, in the Circuit Court of Hancock County pursuant to Miss. Code Ann. § 75-76-121. The MGC filed its Answer on December 27, 1991, alleging that Ladner had failed to state a claim upon which relief could be granted and had not perfected his appeal within the twenty days required under § 75-76-121. Subsequently, the Hancock County trial judge entered an order on April 17, 1992, remanding the case to the MGC for further hearings to compile a record on the matter (as the existing record was inadequate for a review) and to redetermine the lawfulness of Ladner's proposed site.
A formal hearing was subsequently conducted by MGC Hearing Officer Bruce Nourse on June 10, 1992. Evidence was presented by both Ladner and the attorney general on the lawfulness of the proposed site. The hearing was followed by an official meeting of the MGC on June 24, 1992. The matter of Ladner's property was brought before the MGC by Ladner's attorney and the attorney general's office in the form of a presentation which reiterated the evidence produced during the June 10 hearing.
Ladner maintained his position that his property was the westward extension of the Mississippi Sound making the site legal under statutory law and the MGC's own regulations. The attorney general's office and the hearing officer, Bruce Nourse, maintained that the site was on a bayou, according to local fishermen and maps identifying the path of the water as Bayou Caddy, precluding the site from being proper under MGC Regulation No. 2 and Miss. Code Ann. § 97-33-7. The testimony of Mark Smith, based upon his site inspection and the maps' labels indicating that the water for the site was a bayou and not part of the Mississippi Sound, was the MGC's primary evidence to refute Dr. Otvos' research. Mr. Nourse recommended that the preliminary site approval be denied once again since he felt it was a bayou and thus prohibited by Regulation No. 2. The MGC voted unanimously to uphold Mr. Nourse's recommendation and denied Ladner's site approval.
Once again aggrieved by the MGC's refusal to recognize the Ladner property as the westward extension of the Mississippi Sound, and thus a lawful site, Mr. Ladner filed his Petition for Review with the Hancock County Circuit Court on July 11, 1992, seeking to have the MGC's denial of the preliminary site approval reversed. On August 14, 1992, the MGC and the attorney general filed their Answer stating that (1) the circuit court lacked jurisdiction to review a denial of a preliminary site determination, (2) that Ladner had failed to state a ground upon which relief could be granted and (3) that Ladner was not entitled to any relief sought. On April 6, 1993, the Honorable Judge James E. Thomas ruled and entered an order holding that (1) jurisdiction was proper, (2) the Ladner site qualified under the Mississippi Gaming Act and was not prohibited by the MGC's Regulation No. 2, (3) the body of water for the proposed site emptied into the Mississippi Sound, (4) the MGC's denial was in excess of the authority granted to it by the Legislature and was arbitrary and capricious, and (5) thus that the site should have been approved, and reversed the MGC's denial.
The MGC filed a Motion to Stay Enforcement of the Judgment and a Motion to Reconsider and Present Newly Discovered Evidence. On April 26-7, 1993, Mississippi Riverboat Amusement, Casino Magic Corporation, President Casinos and Grand Casinos filed motions for leave to intervene, which Ladner opposed. The circuit court heard all motions on May 20, 1993, and rendered its decision on all pending motions on February 10, 1994. The February 10 decision denied all motions to intervene and reconsider the prior reversal of the MGC's denial of site approval. The trial court reaffirmed its previous decision to reverse the MGC's denial of site approval by stating:
This court finds that it has jurisdiction of the parties and subject matter and that venue is proper with this court ... This court finds that the Ladner site on Bayou Caddy which is the subject of this litigation is qualified for gaming activities under Mississippi law. This court finds that Mississippi Gaming Commission Regulation No. 2 does not prohibit the location of a gaming facility on the Mississippi Sound. Evidence was uncontradicted that the body of water identified as Bayou Caddy is part *455 of the westward extension of the Mississippi Sound which is bordered on the south side by Point Clear Island. Point Clear Island is one of the islands in the chain of islands that border other portions of the Mississippi Sound, the other islands being Petit Bois Island, Horn Island, Ship Island and Cat Island. This court finds that the decision of the Mississippi Gaming Commission was arbitrary and capricious in light of all of the facts available and that the denial of preliminary site approval by the Mississippi Gaming Commission was in excess of the statutory authority granted to the Mississippi Gaming Commission by the Legislature of the State of Mississippi. It is therefore Ordered and Adjudged that the determination by the Mississippi Gaming Commission that the Ladner site located on Bayou Caddy in Hancock County, Mississippi is not qualified for gaming activities be and the same hereby is reversed and that the Ladner property qualifies under Mississippi law and Mississippi Gaming Commission Regulation No. 2 as a potential site for gaming activities.
On March 9, 1994, the MGC appealed the Hancock County circuit court's reversal to this Court raising the following issues for review.
I. IS THERE A RIGHT TO APPEAL A DENIAL OF A PRELIMINARY SITE APPROVAL, A LICENSING DECISION OF THE MISSISSIPPI GAMING COMMISSION (MGC)?
II. DID THE MGC ERR AS A MATTER OF FACT IN FINDING THAT BAYOU CADDY IS A BAYOU AND, ACCORDINGLY, AN UNSUITABLE SITE FOR GAMING OPERATIONS?
III. IS GAMING ON CRUISE VESSELS RESTRICTED AS A MATTER OF LAW TO THE WATERS OF THE MISSISSIPPI SOUND, ST. LOUIS BAY, BILOXI BAY, AND PASCAGOULA BAY?
Casino Magic Corporation and Grand Casinos, Inc., filed briefs with the Court on November 8, 1994, as Intervenor/Appellant alleging the same grounds as the MGC but additionally requested review of the trial court's denial of the motion to intervene raising the following other issue for review:
IV. DID THE CIRCUIT COURT ERR BY REFUSING TO ALLOW GRAND CASINOS TO INTERVENE?

STATEMENT OF THE FACTS
The Mississippi Legislature adopted the Mississippi Gaming Control Act in 1990 which made casino gaming legal along the Mississippi River and Mississippi Gulf Coast. Miss. Code Ann. § 97-33-7(4)(a) initially limited gaming on the Gulf Coast to:
... a cruise vessel as defined in Section 27-109-1 whenever such vessel is in the waters within the State of Mississippi, which lie adjacent to the State of Mississippi south of the three (3) most southern counties in the State of Mississippi, ...
Miss. Code Ann. § 97-33-7(4)(a).
The initial definition of permissible locations was subsequently interpreted by the MGC when it promulgated its own regulation known as Regulation No. 2. It is the interpretation of Regulation No. 2 as it applies to these facts and within the original parameters of § 97-33-7(4)(a) that created the factual dispute in this case.
The body of water upon which Ladner seeks site approval is labeled a bayou. Local fishermen, USGS maps, the MGC and everyone else believe the area to be a bayou, Bayou Caddy; that is, everyone except Ladner and his expert Dr. Otvos. Instead, Ladner and Dr. Otvos contend that it is not what it appears. That is, it looks, moves and appears to be a bayou, but in actuality, it is really the westward extension of the Mississippi Sound, according to Dr. Otvos.
Dr. Otvos received a Ph.D. in geology from the University of Massachusetts and is employed by the Gulf Coast Research Laboratory where he is head of the geology section. Dr. Otvos testified in the "Mississippi Sound Enclaves Case" which involved a dispute dealing with the central areas of the Mississippi Sound which were more than three miles distant from either the mainland or the islands and which the Federal Government claimed as federal land and the State claimed as part of Mississippi. Therefore, Ladner submits that Dr. Otvos is the foremost expert *456 in Mississippi on the Mississippi Sound. We do not take issue with his qualifications or experience since the matter is decided upon other reasons.
The attorney general and the MGC contend that the evidence is contradicted as to whether or not Bayou Caddy is part of the Mississippi Sound. They contend that Bayou Caddy is regularly dredged by the Army Corps of Engineers to maintain it in suitable condition for river traffic which makes it a bayou despite Dr. Otvos' opinion. The testimony of Mark Smith, based upon his site inspection, was presented to prove that it was a bayou and not part of the Mississippi Sound. The record reflects that the circuit court agreed with Dr. Otvos by finding that the evidence was uncontradicted that the Ladner property was part of the Mississippi Sound and not a bayou. However, we decide this case upon procedural rather than factual grounds.

DISCUSSION OF ISSUES

I. IS THERE A RIGHT TO APPEAL A DENIAL OF A PRELIMINARY SITE APPROVAL, A LICENSING DECISION OF THE MISSISSIPPI GAMING COMMISSION (MGC)?
The primary argument alleged by the MGC in the circuit court and on appeal is that a decision by the MGC denying a preliminary site approval for gaming in Mississippi is not capable of judicial review; i.e., no state court has jurisdiction. Therefore, according to the MGC, once it determines that a proposed site is unsuitable and not conforming with their regulations and legislative statutory restrictions, the issue is incapable of being disputed or reviewed by any court of law. This is the threshold and determinative issue with which we agree with the MGC to a limited extent. We find that property owners in Mississippi do not have a statutory right to appeal a site request denial of the MGC so long as the MGC acts within its statutory framework as it did here. However, the MGC does not enjoy plenary power incapable of judicial review under all circumstances.
"A right of appeal is statutory." Bickham v. Department of Mental Health, 592 So.2d 96, 97 (Miss. 1991); See also, Jones v. Barnes, 463 U.S. 745, 751, 103 S.Ct. 3308, 3312-13, 77 L.Ed.2d 987, 993 (1983). Furthermore, "a circuit court has no authority to judicially create a right of appeal from an administrative agency in the absence of clear statutory authority therefor." Bickham v. Department of Mental Health, 592 So.2d 96, 98 (Miss. 1991). The following statutory provisions are the basis for our finding that the circuit court did not properly have jurisdiction in this case.
Miss. Code Ann. § 75-76-3, Construction of Gaming Control Act; legislative findings and declarations, states in pertinent part:
The Legislature hereby finds, and declares it to be the public policy of this state, that:
... .
(5) No applicant for a license or other affirmative commission approval has any right to a license or the granting of the approval sought. Any license issued or other commission approval granted pursuant to the provisions of this chapter is a revocable privilege, and no holder acquires any vested right therein or thereunder.
Miss. Code Ann. § 75-76-3.
Miss. Code Ann. § 75-76-5, Definitions, states in pertinent part:
As used in this chapter, unless the context requires otherwise:
(a) "Applicant" means any person who has applied for or is about to apply for a state gaming license, registration or finding of suitability under the provisions of this chapter or approval of any act or transaction for which approval is required or permitted under the provisions of this chapter.
(b) "Application" means a request for the issuance of a state gaming license, registration or finding of suitability under the provisions of this chapter or approval of any act or transaction for which approval is required or permitted under the provisions of this chapter but does not include any supplemental forms or information that may be required with the application.

*457 ... .
(s) "License" means a gaming license or a manufacturer's, seller's or distributor's license.
Miss. Code Ann. § 75-76-5 (Supp. April 20, 1993).
Miss. Code Ann. § 75-76-29, Executive director to investigate applicants and licensees; authority to make recommendations concerning applicants and licensees; authority of commission with respect to licenses; licenses as revocable privilege; finality of decision of commission, states in pertinent part:
... .
(3) The commission has full and absolute authority to deny any application or limit, condition, restrict, revoke or suspend any license, registration, finding of suitability or approval, or fine any person licensed, registered, found suitable or approved, for any cause deemed reasonable by the commission.
(4) Any license issued or other commission approval granted pursuant to the provisions of this chapter is a revocable privilege, and no holder acquires any vested right therein or thereunder. The initial decision of the commission to deny, limit, condition, or restrict a license shall be final.
Miss. Code Ann. § 75-76-29.
Miss. Code Ann. § 75-76-33, Authority of commission to adopt, amend or repeal regulations; particular regulations specified; regulations licensees required to comply with, states in pertinent part:
(1) The commission shall, from time to time, adopt, amend or repeal such regulations, consistent with the policy, objects and purposes of this chapter, as it may deem necessary or desirable in the public interest in carrying out the policy and provisions of this chapter.
(2) These regulations shall, without limiting the general powers herein conferred, include the following:
(a) Prescribing the method and form of application which any applicant for a license or for a manufacturer's, seller's or distributor's license must follow and complete before consideration of his application by the executive director or the commission.
... .
(j) Defining and limiting the area, games and devices permitted, and the method of operation of such games and devices, for the purposes of this chapter.
Miss. Code Ann. § 75-76-33.
Miss. Code Ann. § 75-76-127, Supreme Court review of circuit court decision; availability of judicial review of particular decisions or orders of commission; availability of writs or equitable proceedings, states:
(1) Any party aggrieved by the final decision in the circuit court after a review of the decision and order of the commission may appeal to the Supreme Court in the manner and within the time provided by law for appeals in civil cases. The Supreme Court shall follow the same procedure thereafter as in appeals in civil actions and may affirm, reverse or modify the decision as the record and law warrant.
(2) The judicial review by the circuit and Supreme Courts afforded in this chapter is the exclusive method of review of the commission's actions, decisions and orders in disciplinary hearings. Judicial review is not available for actions, decisions, and orders of the commission relating to the denial of a license or to limited or conditional licenses. Extraordinary common law writs or equitable proceedings are available except where statutory judicial review is made exclusive or is precluded or where the use of these writs or proceedings is precluded by specific statute.
Miss. Code Ann. § 75-76-127.
Additionally, the Court must adhere to its deferential standard of review of the findings of an administrative agency which the Legislature codified in Miss. Code Ann. § 75-76-125.
Miss. Code Ann. § 75-76-125, Motion requesting taking of additional evidence by commission; modification of decision or order by commission; standard of review; grounds for reversing decision or *458 order of commission, states in pertinent part:
....
(2) The review must be conducted by the court sitting without a jury, and must not be a trial de novo but is confined to the record on review.
(3) The reviewing court may affirm the decision and the order of the commission, or it may remand the case for further proceedings or reverse the decision if the substantial rights of the petitioner have been prejudiced because the decision is:
(a) In violation of constitutional provisions;
(b) In excess of the statutory authority or jurisdiction of the commission;
(c) Made upon unlawful procedure;
(d) Unsupported by any evidence; or
(e) Arbitrary or capricious or otherwise not in accordance with the law.
Miss. Code Ann. § 75-76-125.
Ladner has never applied for or been denied a "license." Ladner has only been denied preliminary site approval which precedes and is a condition precedent to obtaining a license. Therefore, the issue is whether or not the statutes also apply to the prior denial of a proposed site before an application is submitted. The answer is not explicitly contained within the language of the Mississippi Gaming Act. The result is a catch-22 because a land owner cannot get a license if his site is not approved regardless of the additional requirements he may be able to meet which are meaningless if his site is not approved. Accordingly, we find that applying for preliminary site approval is no different from actually applying for a license, as § 75-76-5 includes those persons "about to apply" for findings of suitability as applicants submitting applications.
After analyzing the preceding statutes, we find that jurisdiction was lacking for the following reasons. First, § 75-76-127(2) is the cornerstone statute "explicitly" not granting and "impliedly" denying a person the ability to appeal a denial of a preliminary site decision of the MGC. Section 75-76-5(a) brings Ladner within the meaning of the license denial provision of § 75-76-127(2) because § 75-76-5(a) includes any person "about to apply" as well as any person who has actually submitted a license to the MGC or, as in this case, a request for a "finding of suitability." Section 75-76-29 makes the initial decision of the MGC final regarding the denial, limiting, conditioning or restricting of a license which we find includes "other commission approval," i.e., preliminary site approval, as well pursuant to § 75-76-29. Accordingly, the Mississippi Gaming Act prohibits the ability to appeal an action, decision, or order relating to the denial of a license, which we find includes preliminary site approval, requiring this Court to reverse and render the Hancock County circuit court's ruling on said issue.
In conjunction with our finding of lack of jurisdiction, Ladner's burden of proving that he had a substantial right prejudiced cannot be met because § 75-76-3(5) explicitly does not grant anyone a vested right to gaming upon their property. Gaming is, therefore, a revocable privilege, not a right. Accordingly, there can be no reversal of the MGC's denial because Ladner had no gaming rights in the property which could have been prejudiced by the MGC's denial.
On the other side of the argument, Ladner alleges that the statutes cited as support by the MGC are inapplicable because they deal with the denial of a license and he has only been denied site approval, not a license. Therefore, Ladner asserts that he can appeal the denial of a site request because it is not in the Act and pursuant to § 75-76-121.
Miss. Code Ann. § 75-76-121, Circuit court review of decision or order of commission; enforcement of decision or order not stayed, states in pertinent part:
(1) Any person aggrieved by a final decision or order of the commission may obtain a judicial review thereof in the circuit court of the county in which the petitioner resides or has his or its principal place of business.
... .
Miss. Code Ann. § 75-76-121.
Although § 75-76-121 does allow a person to appeal a final decision of the MGC, § 75-76-127(2) limits such judicial review under § 75-76-121 and excludes judicial review of *459 actions relating to the denial of licenses which we find includes denials of preliminary site approval. Therefore, since the denial of a site pertains to an action relating to the denial of a license and a license cannot be obtained without site approval, the denial of a site request is not generally reviewable either because of § 75-76-127(2), despite § 75-76-121.
The legislature delegated broad powers to the MGC for handling the development of gaming in Mississippi. Miss. Code Ann. § 75-76-3 and § 75-76-29(3). Additionally, the legislature expressly decided that no one has a protected property interest in their land for gaming, making it purely a privilege, not a right. § 75-76-3(5). The legislature expressly decided that judicial review would not be available for any denial of a license which we find impliedly includes a denial of a site approval request as well, even though it is not in the Act, because a license will never be available without a proper site. See § 75-76-29(3) and § 75-76-127(2). Likewise, § 75-76-29(3) gives the MGC the express authority to have the final decision on findings of suitability, impliedly encompassing both site suitability as well as the other financial and character suitability factors required for a gaming license in this state.
However, such a ruling by the Court today does not mean that if a beachfront property owner on the coast, say, for example, where the Grand Casinos are presently located, were denied site approval, where it is unquestionably lawful under the statutes and regulations, that there would be no recourse. Such a result cannot occur in light of our holding in Gill v. Dept. Of Wildlife Conservation, 574 So.2d 586, 593 (Miss. 1990). Gill held that despite the fact that an administrative agency's rulings and findings will be given great deference upon appellate review, the Supreme Court will hold this deference of "no material force where agency action is contrary to the statutory language." Id. Moreover, the Court recently held that the authority of the MGC is limited and must not exceed the authority conferred upon it by the legislature's enactment of our gaming laws. Mississippi Casino Operators Association v. Mississippi Gaming Commission, 654 So.2d 892, 894 (Miss. 1995); Mississippi PSC v. Miss. Power & Light, 593 So.2d 997, 998 (Miss. 1991). We find § 75-76-127(2) valid, but recognize and reiterate that this Court has judicial review of any action by the MGC that exceeds its statutory authority, because the MGC is not beyond judicial review under all circumstances. Therefore, because the right to appeal is statutory, and such a right has not been granted by statute, the denial of preliminary site approval requests is incapable of judicial review so long as the MGC does not exceed its statutory authority.

II. DID THE MISSISSIPPI GAMING COMMISSION ERR AS A MATTER OF FACT IN FINDING THAT BAYOU CADDY IS A BAYOU AND, ACCORDINGLY, AN UNSUITABLE SITE FOR GAMING OPERATIONS?

III. IS GAMING ON CRUISE VESSELS RESTRICTED AS A MATTER OF LAW TO THE WATERS OF THE MISSISSIPPI SOUND, ST. LOUIS BAY, BILOXI BAY, AND PASCAGOULA BAY?
Having announced that the denial of a preliminary site request is not capable of judicial review so long as the MGC does not exceed its statutory authority, and finding that it has not done so as discussed under Issue I, it is unnecessary for this Court to address Issues II and III.

IV. DID THE CIRCUIT COURT ERR BY REFUSING TO ALLOW GRAND CASINOS TO INTERVENE?
The litigation of this case took place over several years, from 1990, when Ladner initially requested site approval, to 1993, when the first motion to intervene was filed. The motions to intervene were filed on April 26, 1993, following the trial court's April 6, 1993, reversal of the MGC's denial of site approval. Therefore, it was not until purely private economic adverse circumstances actually arose that competing gaming interests sought to intervene.
The trial court entered orders denying all parties' requests to intervene on February 7, 1994, finding that under the circumstances and facts of the case, the motions were not well taken. Two other casinos were denied *460 their motions to intervene, but only Grand Casinos and Casino Magic appealed. The Intervenor/Appellant Briefs have been filed by Grand Casinos and adopted by Casino Magic for purposes of this appeal.
Today we find that the trial court lacked jurisdiction pursuant to § 75-76-127(2) to hear the case sub judice as the denial of a site request necessarily falls within the parameters of "actions, decisions, and orders of the commission relating to the denial of a license... ." Therefore, having found that the trial court lacked jurisdiction to hear the merits of the case, it was also without jurisdiction to hear the motion to intervene. Accordingly, this Court finds that the issue of intervention raised on appeal by Grand Casino and Casino Magic should be and is hereby dismissed.

CONCLUSION
The trial court was incorrect in holding that it had appellate review of the denial of the Ladner site request requiring this Court to reverse and render on said issue. Although site approval is not explicitly addressed in the statutes, the statutes do explicitly prohibit the right to appeal the denial of a license request. It is difficult for this Court to distinguish between allowing an appeal of the denial of a site request, as urged by Ladner, and not allowing the appeal of a denial of a license request when one cannot get a license without site approval. It is sensible that since the right of appeal is statutory, and such a right is generally not available for the denial of a license, that there is also no such right for the denial of site approval.
We do not hold that the MGC can act carte blanche and deny site approval for areas that are proper. The MGC was granted much discretion by our lawmakers and, unless the MGC acts outside its statutory boundaries, where it would be subject to judicial review, the Gaming Control Act allows the MGC to deny licenses without review by this Court. Having found that a denial of a site and license request is generally not reviewable, the other questions and issues are not addressed.
The intervention issue is hereby dismissed having found that the trial court lacked jurisdiction over the merits of the case. Accordingly, for lack of jurisdiction, this Court dismisses Grand Casino and Casino Magic's appeal regarding the trial court's denial of their motion to intervene as of right under Rule 24.
REVERSED AND RENDERED IN PART; DISMISSED IN PART.
HAWKINS, C.J., DAN M. LEE, P.J., and SULLIVAN, PITTMAN and SMITH, JJ., concur.
BANKS, J., concurs in result only with separate written opinion joined by McRAE, J.
PRATHER, P.J., not participating.
BANKS, Justice, concurring:
While I agree with the ultimate result reached by the majority, the reinstatement of the Mississippi Gaming Commission order denying site approval, I cannot agree with its reasoning because it says, in essence, that the trial court lacks jurisdiction to hear an appeal of this type, except when the Mississippi Gaming Commission acts contrary to its statutory authority. A court must first have the right of review in order to make that determination. The question of statutory authority goes to the merits of the controversy and is always at issue on the review of administrative decisions. The right to review cannot, in my view, come from the determination itself. I believe that, the circuit court had statutory jurisdiction to decide the issue brought to it. The majority, relying on what it deems the Legislature to have implied rather than what it said, wrongfully deprives Ladner of all review. I would grant review. Based on my review of the record, however, the circuit court decided the issue erroneously on the merits. It follows that I must concur in the judgment vacating the order of the circuit court.

I.
To begin the analysis of the jurisdiction issue we must first determine the nature of the order of which Ladner seeks appellate *461 review. It is an order concluding that property owned by Ladner is not an appropriate site for a casino gambling operation. Ladner has not sought a gaming license. The Mississippi Gaming Commission ("MGC") has engaged in the practice of considering designated sites for approval prior to the formal license application. It does so by regulations thought necessary due to the ambiguity of the statute designating the areas in which gaming is permitted. See Miss. Casino Operators v. Miss. Gaming Comm'n, 654 So.2d 892 (Miss. 1995). The site owner might never apply for a license.
While it is necessary that an applicant have an approved site before obtaining a license, site disapproval is simply not the same as license denial as urged by MGC and accepted by the majority. In fact, the MGC, through counsel asserted to the trial court that "[p]reliminary approval constitutes only the Commission's opinion that the location complies with the applicable gaming laws or regulations, and it does not constitute a license in itself to engage in gaming, or [sic] does it entitle that person to such a license." Counsel further asserted that the MGC no longer considers site approval applications that are not tied to license applications and that the instant application was the only one before the MGC which was not so tied. Counsel refused to commit the MGC to the combined application practice in the future. As it stands, Ladner is before this Court on an application for site approval unrelated to an application for a license.
In the legislative scheme under which the MGC operates, the statute providing for the investigation of applicants for licensure, Miss. Code Ann. § 75-76-29 (1972), never mentions site. That section directs the consideration of the personal qualifications of the people involved including character, reputation, financial stability, and the like. The MGC's judgments on issues such as these may be based on information, face to face character assessment or other factors not readily reducible to writing or review. Because of the nature of the business, preclusion of review of these judgments may be meritorious. The statutory scheme explicitly denies review. Miss. Code Ann. § 75-76-127 (1972) ("Judicial review is not available for actions, decisions and orders of the Commission relating to the denial of a license or to limited or conditional licenses.").
On the other hand, the question whether a site is legal has none of the problems which might make judicial review problematic. Preliminary site approval is a procedure developed by the MGC without any explicit statutory reference. It has never been shown to be, either logically or practically, tantamount to license approval or denial.
Our law, Miss. Code Ann. § 75-76-121 (1972) provides for circuit court review to any "person aggrieved by a final decision or order of the [MGC]." Its placement, or rather misplacement, by the codifiers in a section under "Disciplinary proceedings" was discussed in Mississippi Casino Operators, 654 So.2d at 893 n. 1:
The operators actually filed a civil complaint invoking the jurisdiction of the circuit court under Miss. Code Ann. 1972 § 75-76-121 and Miss.R.Civ.Pro. 57 and 65. In response, the Commission confessed jurisdiction under Miss. Code Ann. 1972 § 75-76-121 and sought dismissal of the claims under the rules of civil procedure. The case proceeded as an appeal under § 75-76-121. While that code section appears to grant a general authority to appeal orders of the Gaming Commission, its placement by the codifiers in that area of the code dealing with disciplinary matters and the language of Miss. Code Ann. 1972 § 75-76-127 requires some discussion. Section 75-76-127(2) provides:
The judicial review by the circuit and Supreme Courts afforded in this chapter is the exclusive method of review of the commission's actions, decisions and orders in disciplinary hearings. Judicial review is not available for actions, decisions and orders of the commission relating to the denial of a license or to limited or conditional licenses. Extraordinary common law writs or equitable proceedings are available except where statutory judicial review is made exclusive or is precluded or where the use of those writs or proceedings is precluded by specific statute. [emphasis supplied].

*462 Succeeding sections of the code, however, refer to the "procedures for disciplinary actions in §§ 75-76-103 through XX-XX-XXX," Miss. Code Ann. 1972 § 75-76-135 (Revised 1991), and "judicial review" as "prescribed by §§ 75-76-121 through XX-XX-XXX." Miss. Code Ann. 1972 § 75-76-137 (Revised 1991).
It is, of course, the statute which controls, not its codification. Furthermore, acceptance of the codification manuscript by the Attorney General is not conclusive of the legislative intent. Miss. Code Ann. § 1-1-51 (Supp. 1993). A fair reading of the statutory scheme would indicate that §§ 75-76-121 through XX-XX-XXX might be better grouped under the sub-heading "[JUDICIAL REVIEW]" rather than "[DISCIPLINARY ACTIONS]". Of course, none of these groupings inserted by the publishers to facilitate reading the code are in the original law. See Laws, 1990 Ex Sess, ch. 45, § 61 (approved June 29, 1990).
Section 75-76-127 makes the statutory appeal scheme exclusive for disciplinary actions and denies any appeal from the denial or limitation of a license. That section does not speak to the grant of a license and we have not found a section which explicitly grants or denies appellate review of such orders. For present purposes, it should suffice to say that we accept the Commission's interpretation that judicial review of its decisions granting licenses or approving sites is authorized by § 75-76-121. [emphasis added] [citations omitted].
We have already, at least tentatively, agreed with the MGC, then, that § 75-76-121 is a general vehicle for review of its orders, excepting only those for which review is proscribed. Id. There is no section which specifically precludes review of preliminary site approval or disapproval orders. In fact, the record reflects that the final decision by the MGC was made at a time when all concerned contemplated an appeal to the circuit court. To be sure, an appeal was already in progress at which no jurisdictional question was raised. While it is clear that the MGC by its action or inaction cannot confer jurisdiction on this court, its actions suggest that no lack of jurisdiction is explicit in the statute. See Strong v. Bostick, 420 So.2d 1356, 1363 (Miss. 1982).
Finally, § 75-76-127 provides that appeal [as provided in 121 and 127 for the circuit and supreme court respectively] shall be the exclusive method of review for disciplinary matters and that there shall be no judicial review for matters related to the denial of a license. It goes on to provide that extraordinary writs shall not be available where statutory judicial review is made exclusive, as in disciplinary actions, or precluded, as in the denial of a license. The majority opinion would stretch the scope of the prohibitory language in one clause and take comfort in doing so by referring to extraordinary writs explicitly rendered unavailable in a succeeding cause. This is implicit in its reference to Gill v. Dept. of Wildlife Conservation, 574 So.2d 586 (Miss. 1990).[1] There we reiterated the power of the court to review the actions of administrative agencies by certiorari. In that case, however, we were faced with legislative silence as to extraordinary writ review. Here we are not. In other instances in which we have faced explicit exclusion of common law extraordinary writs, we have acceded to the legislative command. See Miss. Code Ann. § 99-39-3 (1972) ("abolishes the common law writs relating to post-conviction collateral relief, including ... error coram nobis ... as well as ... post-conviction habeas corpus."); Culberson v. State, 612 So.2d 342, 347 (Miss. 1992) (concluding that abolition of the writs was constitutional); See also Id. at 351-53 (Banks, J., dissenting).
Moreover, the example given by the majority as an instance when review would be available, given its view of the law, does not withstand scrutiny. It is suggested that a *463 beach front property located in an area "unquestionably lawful under the statute and regulations" would give rise to recourse. Of course, that is just what these landowners contend to be the case here. They assert that there is no substantial evidence which would place their property outside the statutory zone of legalized gambling. They contend that their property is a part of the Mississippi Sound and therefore a lawful site for casino gaming under the statute and the regulations. A court must have the power of review before it can determine from the record before the MGC whether a property is "unquestionably lawful."
In my view, the circuit court had jurisdiction to consider this appeal.

II.
It is necessary, then, that we consider the merits of Ladner's claim. In reviewing the decision of the circuit court concerning an agency action this court applies the same standard of review those courts are bound to follow. Miss. Commission on Env. Quality v. Chickasaw County, 621 So.2d 1211, 1216 (Miss. 1993); Miss. Employment Security Comm. v. Gaines, 580 So.2d 1230, 1233 (Miss. 1991). We review the decision of the MGC in accordance with the provisions of the statutory grant of review which track our traditional standards for the review of the actions of administrative actions. Miss. Code Ann. § 75-76-125 (1972); Miss. Commission on Env. Quality v. Chickasaw County, 621 So.2d at 1215; Southeast Mississippi Legal Services v. Mississippi Power, 605 So.2d 796, 798 (Miss. 1992).
We have already determined that Regulation No. 2 as adopted by the MGC defining what is meant by the statutory grant of permission to engage in gaming on waters "within the State of Mississippi, which lie adjacent to the State of Mississippi south of the three (3) most southern counties" was a proper exercise of the power granted to the MGC.[2]Mississippi Casino Operators, 654 So.2d at 894. That regulation describes those waters as the Mississippi Sound and St. Louis Bay, Biloxi Bay and Pascagoula Bay. It excludes the rivers and bayous leading to the bays. The commission took the logical position that while a literal reading of its regulation excludes rivers and bayous leading to the bays but not those leading to the sound, it was only logical that the regulation also applies to bayous emptying into the sound as well. The factual determination before the MGC presented by this case, then, is whether the site in question was on the sound or on a bayou within the meaning of the regulation. The MGC determined that it was on a bayou and that determination must be affirmed if it appears that there is substantial evidence to support it. Cawthon v. Alcan Aluminum Corporation, 599 So.2d 925, 929 (Miss. 1992). We are not at liberty to substitute our judgment for that of the Commission. Id. Moreover, we give great deference to the administrative agency in interpreting its own regulations. Mississippi Department of Environmental Quality v. Weems, 653 So.2d 266, 273 (Miss. 1995); City of Durant v. Humphreys County Memorial Hospital, 587 So.2d 244, 251 (Miss. 1991).
The evidence before the Commission included the following:
1. Aerial infrared photographs indicate the body of water as being distinct from the Mississippi Sound.
2. Maps submitted by Ladner to the commission identify the site as being located on an artificially created canal connected to Bayou Caddy.
3. Letters requesting preliminary site approval "points out that Bayou Caddy is a salt water bayou and not a fresh water bayou."
4. Report of investigator from Mississippi State Tax Commission describes the site as "2,400 feet inland from the Mississippi Sound", cites the United States Geological Survey Map as showing land masses on either *464 side of Bayou Caddy at bayou's mouth and expressing the investigator's opinion "that the proposed location does not meet the requirements set forth in the regulations ... regulations specifically do not authorize operation of a cruise vessel in a bayou."
5. Testimony of Dr. Irvin Otvos that marsh lands south of Bayou Caddy are a filled in extension of the Mississippi Sound, and are a "transitional area and it would be just as hard to define, geologically speaking, where the sound ends and the interior marsh lands start."
6. United States Department of Interior Grand Point Pass Quadrangle Map locating shore line south of Point Clear Island.
7. United States Coastal Survey Chart No. 371, attached to Dr. Otvos's report, depicting "present shore" as being located on seaward side of marsh lands.
8. Testimony of Terryl Ladner that Point Clear Island is "surrounded by marsh," that one must follow bayous to go around Point Clear, and that the site that photos were taken were 1,500 feet from the sound and 1,100 feet eastward of the actual site.
9. Joan Evelyn Bernard's testimony that the Mississippi Sound begins at the mouth of Bayou Caddy, and that the Mississippi Sound is the open water past Bayou Caddy.
10. Hearing officer's recommendations to deny preliminary site approval because the proposed location does not qualify as a suitable site pursuant to the provisions of the Mississippi Gaming Control Act, Miss Code Ann. § 97-33-71 (1972), or Mississippi Regulation No. 2 and that the site is a bayou and a bayou is precluded by law as a suitable site. "Everyone in the meeting called it a bayou, it was referred to over and over as a bayou. I am familiar with the site. It is a bayou gentlemen. And there was testimony that it was in fact the sound, a barrier island, should be a part of a barrier island chain. Anyway you look at it my feeling was that it is a bayou for all practicable purposes."
That evidence provides a substantial basis for the decision of the MGC. It was not an arbitrary or capricious decision and was a decision within the statutory grant of power to the MGC. We are powerless to disturb that decision.

III.
Intervention has been made an issue in this case because Casino Magic sought intervention in the circuit court. In that I would find that the circuit court had jurisdiction, I also address this issue. It should suffice to recognize that this matter was before the circuit court in its appellate capacity. Rather than seeking to intervene, Casino Magic should have applied for permission to file a brief as amicus curiae. See, Rule 5.06, Uniform Rules of Circuit and County Court Practice (While this rule was not effective at the time of this appeal it merely codifies a practice of referring to the rules of the Supreme Court where other provisions are silent with regard to appellate practice in the circuit court.); Rule 29, Mississippi Rules of Appellate Procedure (Providing that one not a party may seek leave to file a brief as amicus where "the amicus has substantial legitimate interests that will likely be affected by the outcome of the case and which interests will not be adequately protected by those already parties to the case.").
Our disposition on the merits conforms to that urged by Casino Magic. It follows that we need not be detained further by consideration of this issue.
McRAE, J., joins this opinion.
NOTES
[1] The majority opinion points us to the rule of statutory construction which dictates deference to the assigned administrative agency's interpretation of the statute and relies on Gill for the proposition that this rule of construction is of no "material force where the agency action is contrary to the statutory language." This principle, of course, has nothing to do with jurisdiction. There must be a vehicle for review, direct action, common law writ or statutory appeal, before the court has the power to determine that an agency has transgressed its statutory authority.
[2] In describing the waters in which gaming is permitted Regulation 2, in reference to waters south of the southernmost counties reads as follows:

In addition to the Mississippi Sound, this would include St. Louis Bay, Biloxi Bay and Pascagoula Bay. However, the rivers and bayous leading to these bays, including, but not limited to the Jourdan River, Wolf River, Bernard Bayou, Tchoutachabouffa River, Pascagoula River and Escapatawpa are not within the authorized area.