# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 97-SA-01621-SCT

***MISSISSIPPI GAMING COMMISSION AND THE MAYOR AND ALDERMEN OF THE CITY OF VICKSBURG, MISSISSIPPI***

***v.***

***E. L. PENNEBAKER, JR., AND HORSESHOE GAMING, INC.***

| | |
|---|---|
| DATE OF JUDGMENT: | 12/16/1997 |
| TRIAL JUDGE: | HON. L. BRELAND HILBURN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: CHARLENE R. PIERCE |
| | R. STEWART SMITH |
| | JOAN MYERS |
| | NANCY DAVIS THOMAS |
| | WALTERINE LANGFORD |
| ATTORNEYS FOR APPELLEES: | WILLIAM E. SPELL |
| | SCOTT E. ANDRESS |
| | BEN HARRY STONE |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | REVERSED AND RENDERED- 06/06/2002 |
| MOTION FOR REHEARING FILED: | 6/20/2002; denied 9/5/2002 |
| MANDATE ISSUED: | 9/12/2002 |

## CONSOLIDATED WITH

## NO. 1998-SA-01077-SCT

*THE MAYOR AND ALDERMEN OF THE CITY OF VICKSBURG, MISSISSIPPI, MISSISSIPPI GAMING COMMISSION, RIVERBOAT CORPORATION OF MISSISSIPPI -- VICKSBURG, AMERISTAR CASINO VICKSBURG, INC., AND HARRAH'S CASINO*

*v.*

*E. L. PENNEBAKER, JR., AND HORSESHOE GAMING, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 6/12/1998 |
| TRIAL JUDGE: | HON. L. BRELAND HILBURN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | NANCY DAVIS THOMAS |
| | WALTERINE LANGFORD |
| | CHARLENE R. PIERCE |
| | R. STEWART SMITH |
| | JOAN MYERS |
| | JANE W. CRAIG |
| | DAN M. McDANIEL |
| | R. SCOTT LEVANWAY |
| | DANIEL G. HISE |
| ATTORNEYS FOR APPELLEES: | WILLIAM E. SPELL |
| | SCOTT E. ANDRESS |
| | BEN HARRY STONE |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | REVERSED AND RENDERED- 06/06/2002 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**COBB, JUSTICE, FOR THE COURT:**

¶1. Horseshoe Gaming, Inc. (Horseshoe) sought approval of a gaming site on the Big Black River in Warren County, Mississippi. The Mississippi Gaming Commission (the Commission) determined that the site was not suitable for gaming. E.L. Pennebaker, Jr., who claimed he owned real property adjacent to the proposed site, filed an appeal from that decision, as an "aggrieved person", in the Hinds County Circuit Court, Second Judicial District. Horseshoe later intervened. The circuit court reversed the Commission's decision, finding that the decision of the Commission was arbitrary and capricious. The Commission, the City of Vicksburg (the City), and three of the Vicksburg casinos, Riverboat Corporation of Mississippi-Vicksburg, Ameristar Casino Vicksburg, Inc., and Harrah's Casino, (the Casinos) appeal[1] asserting numerous assignments of error committed by the circuit court, which have been combined and edited as follows:

> ### I. HEARING THE APPEAL WITHOUT HAVING JURISDICTION
>
> ### II. REVERSING THE COMMISSION'S DECISION
>
> ### III. FINDING THAT HORSESHOE'S INTERVENTION CURED PENNEBAKER'S LACK OF STANDING
>
> ### IV. FINDING VENUE WAS PROPER
>
> ### V. RULING ON PENNEBAKER'S MOTION FOR CONTEMPT
>
> ### VI. DENYING THE CASINOS' MOTION TO INTERVENE

¶2. Concluding that the circuit court erred in reversing the Commission's decision, we reverse the judgment of the circuit court and reinstate the decision of the Commission. Because the resolution of Issue II is dispositive of this appeal, we decline to address the remaining assignments of error.

### FACTS

¶3. In November 1996, Horseshoe filed a state gaming license application for a specific site located in eastern Warren County, near Hinds County and Interstate 20, on the Big Black River. After conducting a public site assessment hearing, the Commission, by majority vote, found that the proposed site was not suitable for gaming operations. In December 1996, Pennebaker filed a petition for judicial review of the Commission's decision. The City and Horseshoe were later allowed to intervene. The City and the Commission subsequently filed a motion to dismiss the appeal, which was denied.

¶4. The circuit court entered an order in December 1997, finding that the proposed site was in compliance with all statutory requirements and was a legal site for the purpose of gaming, and entered its final judgment in June 1998, reversing the Commission's decision. The circuit court found that the application should be approved, and it remanded the matter back to the Commission, with instructions to proceed with Horseshoe's application in accordance with its rules and regulations.

### STANDARD OF REVIEW

¶5. The deferential standard of review the courts afford an administrative agency is even more deferential for review of decisions and orders of the Mississippi Gaming Commission. Pursuant to the applicable statute:

(3) The reviewing court may affirm the decision and order of the commission, or it may remand the case for further proceedings or reverse the decision **if the substantial rights[(2)] of the petitioner** have been prejudiced because the decision is:

(a) In violation of constitutional provisions;

(b) In excess of the statutory authority or jurisdiction of the commission;

(c) Made upon unlawful procedure;

(d) **Unsupported by <u>any</u> evidence**; or

(e) Arbitrary or capricious or otherwise not in accordance with law.

Miss. Code Ann. § 75-76-125(3) (2000) (emphasis added). *See also **Mississippi Gaming Comm'n v. Bd. of Educ.***, 691 So.2d 452, 455 (Miss. 1997). Additionally, "a rebuttable presumption exists in favor of the administrative agency, and the challenging party has the burden of proving otherwise." ***Clancy's Lawn Care & Landscaping, Inc., v. Miss. State Bd. of Contractors***, 707 So.2d 1080, 1082 (Miss. 1997).

## DISCUSSION

### ISSUE II. REVERSING THE COMMISSION'S DECISION.

¶6. The Commission argues that there is no reasoning or evidence to suggest that its decision was arbitrary or capricious. It argues that the record clearly proves the opposite conclusion, because the record is replete with substantial evidence of negative archeological, paleontological, historical, and economic consequences. Horseshoe responds that the evidence submitted in opposition to the proposed site was flawed, unreliable, and based upon incorrect assumptions. We agree with the Commission.

¶7. During the hearing, two of the Commissioners voiced their opinion that the proposed site was legal. However, a vote was never taken as to the legality of the site, only the suitability of the site for gaming. These opinions concerning legality of the site were not a part of the Commission's official minutes. The Commission objected to the inclusion of these opinions as evidence before the circuit court, and it objects to the inclusion of this evidence before this Court on appeal. The Commission argues that an agency can only speak through its minutes, thus comments made by the members of the Commission are of no force. The Commission is correct, and it was error for the circuit court to consider same. We have stated this principle as follows:

> A board of supervisors can act only as a body, and its act must be evidenced by an entry on its minutes. The minutes of the board of supervisors are the sole and exclusive evidence of what the board did. The individuals composing the board cannot act for the county, nor officially in reference to the county's business, except as authorized by law, and the minutes of the board of supervisors must be the repository and the evidence of their official acts.

***Smith v. Bd. of Supervisors***, 124 Miss. 36, 41, 86 So. 707, 709 (1920). *See also **Nichols v. Patterson***, 678 So.2d 673, 682 (Miss. 1996)(holding that "A Board of supervisors can act only as a body, and its act must be evidenced by an entry on its minutes. The minutes of the board of supervisors are the sole and exclusive evidence of what the board did."). The same principle applies to the individual members

of the Mississippi Gaming Commission. They can not speak for the Commission, and the Commission only speaks through the official act of memorializing its minutes. Thus, it was error for the circuit court to consider this evidence.

¶8. In reversing the decision of the Commission, the circuit court found it to be arbitrary and capricious. There was no finding by the circuit court that the Commission violated the Constitution, exceeded its statutory authority or jurisdiction, or performed an unlawful procedure. The statute clearly authorizes the Commission to make certain decisions such as site suitability. Thus, in making such a determination, the Commission does not exceed its statutory authority. *See* Miss. Code Ann. § 75-76-29(3) (2000); ***Casino Magic Corp. v. Ladner***, 666 So.2d 452, 459 (Miss. 1995). Further, as will be demonstrated, the Commission's decision was supported by substantial evidence, even though "any" evidence would have sufficed. Thus the decision was neither arbitrary nor capricious.[(3)]

### A. Was the Commission's Decision Supported by Any Evidence?

¶9. In 1990, the Mississippi Legislature enacted the Mississippi Gaming Control Act, Miss. Code Ann. §§ 75-76-1 to -313 (2000). In doing so, the Mississippi Gaming Commission was created in order to regulate the gaming industry effectively. *Id.* § 75-76-7. Further, the Legislature declared the following:

> Public confidence and trust can only be maintained by strict regulation of all persons, locations, practices, associations and activities related to the operation of licensed gaming establishments and the manufacture or distribution of gambling devices and equipment.

*Id. §* 75-76-3(b).

¶10. While administrative agency decisions are generally afforded great deference, that deference is enhanced when that administrative agency is the Mississippi Gaming Commission. The Gaming Commission's decision will not be disturbed if it is supported by "any" evidence. *See **Mississippi Gaming Comm'n v. Bd. of Educ.***, 691 So.2d at 455; ***Casino Magic Corp. v. Ladner***, 666 So.2d at 458. In the case sub judice, besides the testimony of thirty-six different individuals, for and against the proposed site, sixty documents and other types of evidence were submitted to the Commission for consideration. It is undeniable that substantial evidence was introduced at the public hearing supporting the Commission's decision that the Big Black River site was not suitable for gaming, including the following:

> 1. Allen Huffman, of the research firm Huffman & Rejeban, submitted a detailed analysis of the adverse effect the project would have on the historical and archeological sites along the river.

> 2. David Dockery, Chief of Office of Geology for the State, presented evidence showing the negative impact the project would have on the paleontological significance of the location.

> 3. Allen Rachels of the accounting firm of Crow, Chizek and Company, presented evidence of the adverse economic impact of the project in a detailed study.

> 4. Further adverse economic impact studies were presented by the Vicksburg/Warren County Economic Development Foundation, the Mayor of Vicksburg, and the City of Vicksburg.

> 5. The City of Vicksburg also presented evidence of the detrimental impact the project would have on employment opportunities and tourism.

¶11. In sum, the above listed items satisfy the "any"evidence requirement, and the Commission's decision was amply supported by the evidence presented.

### B. Was the Commission's Decision Arbitrary or Capricious?

¶12. The circuit court reversed the Commission's decision because it was arbitrary and capricious. However, it did so without enlightening us with its reason for this conclusion. This Court has defined the term "arbitrary" as follows: "An administrative agency's decision is arbitrary when it is not done according to reason and judgment, but depending on the will alone." *Mississippi State Dep't of Health v. Natchez Comty. Hosp*., 743 So.2d 973, 977 (Miss. 1999). This Court has defined the term "capricious" as follows: "An action is capricious if done without reason, in a whimsical manner, implying either a lack of understanding of or disregard for the surrounding facts and settled controlling principles." *Id.* Further, in *City of Biloxi v. Hilbert*, 597 So.2d 1276, 1280-81 (Miss. 1992), we said: "'Fairly debatable' is the antithesis of arbitrary and capricious. If a decision is one which could be considered 'fairly debatable,' then it could not be considered arbitrary or capricious ...."

¶13. After a thorough review of the record before us, we find that the Commission's decision was neither arbitrary nor capricious. There is no indication in the record that the Commission's decision was *not* done according to reason and judgment. There is no indication that the Commission's decision was done in a whimsical manner. Even if we assume, without agreeing, that the Commission's decision was "fairly debatable," it would necessarily mean that the decision was not arbitrary or capricious. The Commission argues that it acted prudently, within its scope of authority, and upon evidence presented when it decided that the proposed site on the Big Black River was not a suitable location for gaming. We agree.

¶14. As we have stated, "this Court ought and generally will affirm a trial court sitting without a jury on a question of fact unless, based upon substantial evidence, the court must be manifestly wrong." *Ezell v. Williams*, 724 So.2d 396, 397 (Miss. 1998). In the case sub judice, based upon the evidence before it, the circuit court's decision was not based upon substantial evidence, and was thus, manifestly wrong. In *Mississippi Bd. of Pub. Accountancy v. Gray*, 674 So.2d 1251, 1253 (Miss. 1996), we stated:

> A reviewing court cannot substitute its judgment for that of the agency or reweigh the facts of the case. Chancery and Circuit Courts are held to the same standard as this Court when reviewing agency decisions. When we find the lower court has exceeded its authority in overturning an agency decision we will reverse and reinstate the decision.

It was not the place of the circuit court to sit in the shoes of the Commission and decide whether or not the proposed sit is suitable for gaming, nor is it our place. Pursuant to the standard of review, we can not, nor need not make that determination. Because the circuit court exceeded its authority by substituting its judgment for that of the Commission, we must reverse and reinstate the Commission's decision.

### CONCLUSION

¶15. The Commission's decision was supported by ample evidence, and was not arbitrary or capricious. Thus, the circuit court committed manifest error in reversing it. We therefore reverse the judgment of the circuit court and reinstate the decision of the Commission.

¶16. **REVERSED AND RENDERED.**

**PITTMAN, C.J., WALLER, EASLEY AND CARLSON, JJ., CONCUR. DIAZ, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY McRAE AND SMITH, P.JJ. GRAVES, J., NOT PARTICIPATING.**

**DIAZ, JUSTICE, DISSENTING:**

¶17. I respectfully dissent to the majority's reversal of the circuit court and reinstatement of the Gaming Commission's determination that the proposed site is unsuitable for gaming. The majority believes that the decision could not have been arbitrary and capricious because it was supported by substantial evidence. As demonstrated by the majority, a number of witnesses who were opposed to the new gaming site offered opinion testimony as to their belief that the new gaming site would adversely affect historical, archeological, paleontological, and economical aspects of the proposed gaming site and surrounding areas. The economic impact study and other studies were submitted by the City of Vicksburg. In addition, witnesses testifying as to the historical, archeological, and paleontological impact appeared on behalf of the City of Vicksburg, a biased party that would obviously oppose any competition from casino's outside of Vicksburg. Horseshoe Gaming sets forth several reasons why this evidence is flawed and unreliable. Whether this evidence is flawed or not, a decision based on studies and testimony influenced by the wishes of the City of Vicksburg and its existing casinos is in itself arbitrary and capricious. The decision of the Gaming Commission should only turn on whether the proposed site was a legal and suitable site for gaming, not whether Vicksburg faces a threat of competition. Choosing to rely upon anti-competitive studies and testimony submitted by parties that are clearly biased and opposed to competition is clearly inappropriate. The majority concludes that the evidence and testimony is substantial evidence. I disagree.

¶18. There was no evidence presented that would suggest that the proposed site was a poor choice for a gaming site. On the contrary, all of the evidence presented suggests that the proposed site is an excellent site to build a competitive gaming operation. Any evidence suggesting that Vicksburg might be damaged from a casino outside of Vicksburg is only an indication that Vicksburg fears the competition this new casino could bring. This type of evidence should not have been considered. Furthermore, as per Miss. Code Ann. § 97-33-1(b) and according to a majority of the Commission panel, the proposed site is a legal site for gaming. The opposing evidence, listed by the majority, merely amounts to a politically influenced attempt to keep an outside casino from competing with the Vicksburg casinos. In the Gaming Commission's order, the finding was that gaming development at the proposed site would adversely affect the City of Vicksburg and its existing casinos. Not only is this finding arbitrary and capricious, it also directly conflicts with Legislative mandates.

¶19. The Mississippi Legislature requires the Mississippi Gaming Commission to regulate gaming so as to promote competition. The statute provides:

> (3) The Legislature hereby finds, and declares it to be the public policy of this State, that:

> (a) regulation of licensed gaming is important in order that licensed gaming is conducted honestly and *competitively*, that the rights of the creditors of licensees are protected and that gaming is free from criminal or corruptive elements. (emphasis added).

Miss. Code Ann. § 75-76-3 (Rev. 2000). In addition, the Gaming Commission has stated, "[the Commission] is not charged to protect existing licensees from additional competition, and we do not intend to allow perpetuation of oligopoly through challenges to sites of competitors."

¶20. The Commission has turned its back on its own principles, allowing Vicksburg and Vicksburg casinos, fueled by the potential threat of competition, to influence the Commission's decision in denying the gaming site. The bulk of the presentation in opposition to the proposed gaming site consisted of testimony that a casino on the Big Black River location would disrupt the gaming industry in Vicksburg. The decision should not turn on whether Vicksburg approves of the gaming site. The decision, as per legislative mandate, should be based solely on whether the site was a legal and suitable site for a casino. The proposed gaming site would only foster healthy competition. For these reasons, I would affirm the decision of the circuit court and its holding that the Commission's decision was arbitrary and capricious.

**McRAE AND SMITH, P.JJ., JOIN THIS OPINION.**

1. The Vicksburg Casinos were allowed to present oral arguments at the public hearing. The Casinos later filed a motion to intervene in the appeal which the circuit court denied. The Casinos then appealed to this Court, and we, by order dated December 8, 1998, consolidated the three different causes (two filed by the Commission and the City and one filed by the Casinos) into the one appeal that is before us today.

2. Pursuant to Miss. Code Ann. § 75-76-3(5) (2000), a gaming license is a privilege, not a right.

3. Horseshoe argues that when the circuit court determined that the Commission's decision was arbitrary and capricious, it was really saying that the Commission had exceeded its statutory authority. However, because the circuit court held that the decision was arbitrary and capricious, we will address that determination, notwithstanding Horseshoe's creative interpretation of what the circuit court really meant.