BARNES, J.,
for the Court:
¶ 1. Officers Olaf Raybon and James Holden sought certification as full-time law enforcement officers with the Mississippi Board on Law Enforcement Officer Standards and Training (Board) under Mississippi Code Annotated section 45 — 6—11 (2)(b) (Rev.2011). This statute stated, in pertinent part, that certified part-time officers “may” obtain certification, for a limited period of time, as a full-time law enforcement officers “without having to meet further requirements” of the Board, if they have twenty-five years of law enforcement experience. The Board unanimously denied Raybon’s and Holden’s applications. Accordingly, Raybon and Holden appealed to the Pearl River County Chancery Court,[1] which reversed the Board’s decision, granting them full-time certification. The Board now appeals. Finding error with the chancery court’s judgment, we reverse its decision and reinstate the Board’s decision.
STATEMENT OF FACTS AND PROCEDURAL HISTORY
¶2. In 1981, the Mississippi Legislature enacted the Law Enforcement Officers Training Program (the Act) under Mississippi Code Annotated sections 45-6-1 through -19 (Rev.2011). The Act established the Board and vested it with absolute authority to establish minimum standards for employment, training, and education of law enforcement officers. Miss.Code Ann. §§ 45-6-5, -7. Under section 45-6-7(c), the Board has the authority to “[cjertify persons as being qualified under the provisions of this chapter to be law enforcement officers or part-time law enforcement officers.”[2]
*224 ¶ 3. In 2009, State Senator Sid Albrit-ton drafted Senate Bill 2803, which became codified as section 45 — 6—11 (2)(b). The bill’s title states it is an Act “to revise the qualifications to be designated as a law enforcement officer for part-time officers having a certain level of experience.” That section provides:
Any person who has twenty-five (25) years of law enforcement experience, whether as a part-time, full-time, reserve or auxiliary officer, and who has received certification as a part-time officer, may be certified as a law enforcement officer as defined in Section 45-6-3(c) without having to meet further requirements. Application to the board to qualify under this paragraph shall be made no later than June 30, 2009.
Miss.Code Ann. § 45-6-ll(2)(b) (emphasis added). The bill became law in April 2009, leaving approximately seventy-six days for officers to submit an application to the Board to qualify under this new subsection.
¶ 4. On July 16, 2009, at the regular meeting of the Board, it considered the timely applications of twenty part-time officers,[3] including Raybon and Holden. Senator Albritton personally appeared before the Board and explained that the legislation was originally designed for the narrow intent of certifying one part-time officer, Raybon, as a full-time law enforcement officer, so he could work as a school resource officer. At the time, Raybon had approximately forty-six years in law enforcement as a part-time officer.[4] Raybon needed full-time employment because he no longer had a side business. Previously, he had tried to become full-time certified, but the Board rejected him. Raybon understood the Board could not make exceptions to the full-time certification requirements, and thus Senator Albritton opened this avenue for him.
¶ 5. During the open meeting, the Board considered public comments from law enforcement personnel who were “vigorously opposed” to the legislation because it was contrary to the Board’s long-standing policy requiring applicants for full-time certification to meet the minimum requirements by attending the regimented training academy. Many were concerned it would lower the level of professionalism in law enforcement, as well as be unfair to those officers who went through the rigors of the training academy to become certified. Senator Albritton remarked on the bill’s usage of the term “may,” and acknowledged the final decision for certifying the officers was at the Board’s discretion. The discussion was followed by a motion to go into executive session due to “possible litigation.” Ultimately, the Board voted unanimously to deny all twenty applicants for full-time certification, including Raybon and Holden. The Board’s denial was because the applicants did “not meet the minimum standards for full-time certification.” The Board informed the Picayune, Mississippi chief of police of Raybon’s denial by letter dated July 22, 2009. The letter stated Raybon would have to fulfill the requirements of basic training in order to receive full-time status.
¶ 6. Raybon and Holden appealed the Board’s decision to the chancery court, *225 which ruled that there were insufficient “findings” by the Board regarding the “across the board denial.” Additionally, the court found that the Board’s “staff documents” relating to Raybon and Holden indicated they did not need further training, and the Board’s reason for going into executive session was inadequate. Further* the court found that, given the testimony that Raybon was the reason the new statute was created, the Board’s decision to deny certification was arbitrary, capricious, and not supported by substantial evidence. The chancery court thus reversed and rendered the Board’s decision, certifying Raybon and Holden as full-time law enforcement officers without having to meet further requirements. The Board timely appealed.
STANDARD OF REVIEW
¶ 7. An administrative agency’s decision will not be disturbed “unless the agency order was unsupported by substantial evidence, was arbitrary or capricious, was beyond the agency’s scope or powers, or violated the constitutional or statutory rights of the aggrieved party.” Miss. Bd. on Law Enforcement Officer Standards & Training v. Clark, 964 So.2d 570, 573 (¶ 7) (Miss.Ct.App.2007) (citing Miss. Bd. on Law Enforcement Officer Standards & Training v. Voyles, 732 So.2d 216, 218 (¶ 6) (Miss.1999)). Furthermore, an appellate court “cannot substitute its judgment for that of the agency”; instead, the “[ajppel-late review of an agency decision is limited to the record and the agency’s findings.” Id. “When this Court finds that the lower court has exceeded its authority in overturning an agency decision, we will reverse and reinstate the agency’s decision.” Id.
¶ 8. Additionally, “[a]n agency’s interpretation of a rule or statute governing the agency’s operation is a matter of law that is reviewed de novo, but with great deference to the agency’s interpretation.” Miss. Methodist Hosp. & Rehab. Ctr., Inc. v. Miss. Div. of Medicaid, 21 So.3d 600, 606 (¶ 15) (Miss.2009) (citing Sierra Club v. Miss. Envtl. Quality Permit Bd., 943 So.2d 673, 678 (¶ 10) (Miss.2006)). “This ‘duty of deference derives from our realization that the everyday experience of the administrative agency gives it familiarity with the particularities and nuances of the problems committed to its care which no court can hope to replicate.’ ” Id. at 606-07 (¶ 15) (quoting Gill v. Miss. Dep’t of Wildlife Conservation, 574 So.2d 586, 593 (Miss.1990)).
ANALYSIS
¶ 9. The Board argues that the chancery court erred in finding its unanimous decision to deny full-time certification to Raybon and Holden was not supported by substantial evidence, and was arbitrary and capricious. An administrative agency’s decision will be deemed arbitrary and capricious if it is not based on substantial evidence. Pub. Emps’ Ret. Sys. v. Allen, 834 So.2d 50, 53 (¶ 10) (Miss.Ct.App.2002). We note the chancery court did find that, absent an arbitrary and capricious decision, the grant or denial of certification under section 45—6—11 (2) (b) was within the Board’s discretion.
I. Whether the Board’s decision was arbitrary and capricious.
¶ 10. The Board argues its decision was not arbitrary and capricious. “An administrative agency’s decision is arbitrary when it is not done according to reason and judgment, but depending on the will alone.” Miss. Gaming Comm’n v. Pennebaker, 824 So.2d 552, 556 (¶ 12) (Miss.2002) (quoting Miss. State Dep’t of Health v. Natchez Cmty. Hosp., 743 So.2d 973, 977 (¶ 13) (Miss.1999)). “An action is capricious if done without reason, in a *226 whimsical manner, implying either a lack of understanding of or disregard for the surrounding facts and settled controlling principles.” Id.
¶ 11. Raybon and Holden argue that there were only two requirements under section 45-6-11 (2) (b): twenty-five years of law enforcement experience and receiving certification as a part-time officer. Additionally, they argue the Board only had discretion to decide whether the applicants met these two requirements, and if they did, the Board had no discretion to deny certification. We disagree.
¶ 12. Regarding statutory interpretation,
[t]he function of the Court is not to decide what a statute should provide, but to determine what it does provide. The court must not broaden or restrict a legislative act. The Court’s goal is to give effect to the intent of the Legislature. To determine legislative intent, the Court first looks to the language of the statute. If the words of a statute are clear and unambiguous, the Court applies the plain meaning of the statute and refrains from using principles of statutory construction.
Lawson v. Honeywell Int’l, Inc., 75 So.3d 1024, 1027 (¶ 7) (Miss.2011) (citations omitted). Specifically, “[i]n statutory interpretation, the term ‘may' indicates a permissive term, not a mandatory term, such as the term ‘shall’ would indicate.” Tunica Cnty. v. Hampton Co. Nat’l Sur., 27 So.3d 1128, 1134-35 (¶ 20) (Miss.2009) (citing Weiner v. Meredith, 943 So.2d 692, 694 (¶ 8) (Miss.2006)).
¶ 13. After a review of the record, we find that the Board’s decision was neither arbitrary nor capricious. The plain and unambiguous language of the statute, and the use of the term “may,” gave the Board discretion to deny full-time certification for the applicants, even if they had the requisite twenty-five years of law enforcement experience and received certification as part-time officers. Thus, the plain language of the statute authorizes, but does not require, that every applicant meeting the two requirements be certified as full-time. Moreover, prior to the statute’s amendment, the Board was not authorized to grant such an exception for full-time certification. The Board notes that almost every subsection of section 45-6-11, including the subsection at issue here, also used the term “shall” when an action was mandated.[5] Because Raybon and Holden *227 did not meet the minimum standards, the Board rejected their applications for full-time certification. As stated earlier, chapter 1, section 101.03 of the manual lists the guidelines the applicant must meet in order to be employed as a law enforcement officer. Individuals who meet both the requirements of section 101.03 and “the minimum employment guidelines are eligible to be employed as an officer.”
¶ 14. Moreover, Senator Albritton, the author of the legislation, spoke at the July 16, 2009 Board meeting. He stated the original intent of Senate Bill 2803 was for Raybon to receive certification, but “naturally, the decision is [the Board’s].” Regarding the specific language of the bill, he stated:
The intent on the “may,” rather,than “shall”[;] when you have these you don’t have much discretion where when you do look at this and say these people did do this or they can’t document training or time in. That’s the intent of the “may”[;] of course you could take it any way you want. It was intended for the original people, but at the same time if there were other people they could go in it. The intent was to open this avenue, very limited, and close it.
However, legislative intent may only be inferred from a statement of the bill’s author when the statement is consistent with the statutory language and other legislative history. The interpretation of a bill by the author is not binding on a court. Norman J. Singer & J.D. Shambie Singer, Statutes and Statutory Construction § 48.15 (6th ed.2007). The Board’s legal counsel, James Dale, commented that because of the use of the word “may” in the legislation, the Board did not have to certify any of the applicants. Accordingly, the Board had the discretion to decline to offer another venue for full-time certification that required no training.
¶ 15. The Board’s action was consistent with the Board’s policy of how an applicant becomes certified full-time. The use of the term “may” in section 45 — 6—11 (2) (b) authorized, but did not require, the Board to approve the applicants as full-time officers through a different venue than its usual policy. The Board’s denial was a reasonable interpretation of the statute. Therefore, the decision cannot be considered arbitrary and capricious.
II. Whether the Board’s decision was supported by substantial evidence.
¶ 16. The Board claims Ray-bon and Holden did not meet the minimum standards under the Board’s long-standing policy for full-time certification. We agree, and find substantial evidence supported its decision to deny Raybon and Holden full-time certification. Substantial evidence is defined as “such relevant evidence as reasonable minds might accept as adequate to support a conclusion.” Pub. Emps’ Ret. Sys. v. Marquez, 774 So.2d 421, 425 (¶ 13) (Miss.2000) (citing Delta CMI v. Speck, 586 So.2d 768, 773 (Miss.1991)). Substantial evidence is “more than a ‘mere scintilla’ or suspicion.” Id. Because there was no hearing,[6] the Board’s minutes of its July 16, 2009 open meeting constitutes the evidence in this matter. “[P]ublic boards speak only through their minutes and their actions are evidenced solely by entries on the minutes.” Thompson v. Jones Cnty. Cmty. Hosp., 352 So.2d 795, 796 (Miss.1977).
*228 ¶ 17. The Board argues the chancery court erred in ruling that the Board’s “findings” were inadequate and in improperly reducing the Board’s findings to the following paragraph in the minutes:
Regarding item # 5 dealing with Senate Bill 2803, does the Board have a motion[?] Mr. Snyder stated that he had a motion. Mr. Snyder stated that while twenty (20) requests for full-time certification have been submitted to the Board pursuant to Mississippi Code Section 45 — 6—11 (2)(b), I hereby move that the Board deny full-time certification to these twenty (20) applicants on the ground that they do not meet the minimum standards for full-time certification. Mr. Cole seconded the motion. The vote was unanimous and the motion carried.
Based on the entirety of the Board’s minutes, not merely the above excerpt, we agree that there was substantial evidence to support the Board’s decision. The qualification issues were discussed at length. Further, several negative public comments were made at the Board’s meeting regarding the certification of officers under Senate Bill 2808, which justifies the Board’s decision. Chief Ken Winters, director of the Mississippi Chiefs of Police Association, stated:
[Standards have been in place for twenty-nine (29) years and their association vigorously opposed this piece of legislation .... Everything we have done to raise the level of professionalism in law enforcement basically with one swipe of the pen nullifies it.... [I]f you open that door and let politics into this regulatory commission, you may as well do away with this board and let the legislature decide who should be certified, that standards mean[ ] nothing.
Chief David Lindley, former president of the same organization, and chair of the association’s legislative committee, agreed, commenting: “The idea that someone has been in law enforcement for twenty-five (25) years, but does not have the professional dedication or frame of mind to go to the academy (and there are many of them across the state now),” he found problematic and unfair to those people who had been “put through a strenuous, rigorous training exercise” to get certification. He continued that “[w]e are trying to raise the standard and raise the bar where certification in Mississippi means something. These individuals have had their entire lifetime to go to the academy and they didn’t do it.... This is not in the best interest of law enforcement.”
¶ 18. We also agree with the Board that the chancery court misinterpreted certain “staff documents” related to the twenty applicants. The court interpreted these “documents” as stating that Raybon and Holden did not need any further training. These documents were actually a chart, presented at the meeting, entitled “Equivalency of Training for Senate Bill 2803,” which gave the basic course, agency, “equivalency rule” (Senate Bill 2803), and training required for each of the twenty applicants. Holden was shown as having completed the Pearl River County Sheriffs Department Reserve Academy in September 2006, receiving part-time certification and having twenty-five years of law enforcement experience. Raybon’s part-time certification was based on “various in-service training.” The Board explained that this method was the “grand-fathered” method of certification under section 45-6-11(1).[7] The chart showed that for both *229 individuals, there were “no further requirements” under the “training required” column. However, the Board explained this notation did not mean that Raybon and Holden qualified for full-time certification under the bill. The Board stated there have always been two ways to become certified full-time: complete the basic course training or comply with the requirements of equivalency training, both of which are explained in the Board’s manual.[8] The Board stated neither Raybon nor Holden qualified under these two preexisting methods. However, section 45-6-ll(2)(b) provided a third method for the Board to provide full-time certification, which was available during a short period of time (approximately seventy-six days). The method provided no training; instead, the individual must have twenty-five years’ experience and part-time certification. The applicants on the chart were seeking certification under Senate Bill 2803 (the “equivalency rule”), not the other two equivalency methods in the manual; thus, the chart showed “no further requirements” under the “training required” column. The Board, however, denied the third method of certification for them. And there was no evidence to suggest that Raybon and Holden were not required to meet the minimum requirements for full-time certification after the denial.
¶ 19. In its order reversing the Board’s decision, the chancery court, and subsequently Raybon and Holden, also criticized the Board for calling an executive session based on an inadequate reason (“possible litigation”), and not providing minutes of the session. The court cited to LaCroix v. Marshall County Board of Supervisors, 28 So.3d 650, 661 (¶ 30) (Miss.Ct.App.2009), where calling an executive session for “pending litigation” was deemed insufficient, in a claim under the Open Meetings Act. (Citing Hinds Cnty. Bd. of Sup’rs v. Common Cause of Miss., 551 So.2d 107, 111-12 (Miss.1989)). While a public body may enter into executive session for a variety of reasons, the reason given “must be meaningful” and “more than some generalized term.” Id. at (¶¶27, 29). The LaCroix court also found that there was no evidence that “the Board [wa]s violating the Open Meetings Act by not taking minutes in executive session as required by statute.” Id. at 662 (¶ 31). The minutes of an executive session must reflect certain basic information or record “any final actions taken.” “Unless final actions or votes are taken during executive session, no minutes are required unless ‘the public body requests [they] be included.’” Id.
¶20. LaCroix is distinguishable. The case before us does not consist of an Open Meetings Act claim, as LaCroix did. And even though the Board’s reason for calling an executive session was insufficient under LaCroix, we do not find this inadequacy reversible error. Further, the Board’s minutes reflected all of the necessary basic information about the Board’s decision, regardless of whether minutes were taken during the executive session.
*230 ¶21. Raybon and Holden also claim that the Board did not properly examine their- respective applications. However, because the Board declined the invitation of the Legislature to certify the applicants under section 45 — 6—ll(2)(b), the Board was not required to examine carefully their applications. Raybon and Holden did not meet the minimum qualifications set forth in the Board’s policy. We conclude the Board’s denial was supported by substantial evidence in the minutes.
CONCLUSION
¶ 22. We find the chancery court erred in its reversal of the Board’s decision. Accordingly, we reverse the judgment of the chancery court, and we render a judgment to reinstate the Board’s decision.
¶ 23. THE JUDGMENT OF THE CHANCERY COURT OF PEARL RIVER COUNTY IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE AP-PELLEES.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, ROBERTS AND MAXWELL, JJ, CONCUR. CARLTON, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. JAMES, J., CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION. FAIR, J., NOT PARTICIPATING.

. In the record, Officer Raybon’s agency was listed as the Picayune Police Department, in Pearl River County, and Officer Holden’s agency was the Pearl River County Sheriff’s Department.

. The Board's Professional Certification Policy and Procedures Manual also describes the policies and procedures the Board has established concerning the employment of law enforcement officers in Mississippi. Chapter 1, section 101.03 of the manual sets forth the basic guidelines that a law enforcement applicant must meet in order to be employed as a law enforcement officer. Board Manual, http://www.sos.ms.gov/ACProposed/00013666 b.pdf. Chapter 1, section 101.04 states: “Individuals who meet both the definition of a law enforcement officer in 101.03 ... and who meet the minimum employment guidelines are eligible to be employed as a law enforcement officer.” Id. Chapter 1, Section 101.02(1) states Mississippi Code Annotated section 45-6-11(1) provides an exclusion or "grand-father clause" to the guidelines of section 101.03 for eligible law enforcement officers who are already serving under permanent appointment as of July 1981, among others. Id. These individuals "are not required to meet any of the provisions of the LEOTP [ (Law Enforcement Officers Training Program) ]. This is the sole qualifying factor for any exemption under the ‘grand-father clause’ of the LEOTP Act. The Act does not *224 provide for any exemption based on prior years of service.” Id.

. The Board claims the statute had the "unintended result of opening the door” for twenty law enforcement officers to apply for full-time certification.

. The bill originally required thirty years of law enforcement experience to accommodate Raybon, but the bill was revised to twenty-five years to allow a second individual to qualify for full-time certification.

. See Miss.Code Ann. § 45-6-11(1) ("Law enforcement officers already serving under permanent appointment on July 1, 1981 ... shall not be required to meet any requirement of subsections (3) and (4) of this section as a condition of continued employment .... ”); § 45-6-1 l(2)(a) ("Any person who has twenty (20) years of law enforcement experience and who is eligible to be certified under this section shall be eligible for recertification .... ”); § 45-6-1 l(3)(a) ("No person shall be appointed or employed as a law enforcement officer or a part-time law enforcement officer unless that person has been certified as being qualified _”); § 45-6-1 l(3)(b) ("No person shall be appointed or employed as a law enforcement trainee in a full-time capacity ... for a period to exceed one (1) year.”); § 45-6-11(4) (“[T]he board, by rules and regulations consistent with other provisions of law, shall fix other qualifications for the employment of law enforcement officers ....”) (emphasis added).
Further, the Board also points out on appeal that bills identical to Senate Bill 2803 were introduced in legislative sessions before 2009, and each bill used the term "shall” and not "may,” and each bill died in committee. The failure of these bills suggests that the Legislature in 2009 did not intend the term “may” to be mandatory. See http://billstatus. ls.state.ms.us/2010/pdf/history/SB/SB2899. xml; http://biIIstatus.ls.state.ms.us/2011/pdf/ history/SB/SB2462.xml; and http://billstatus. ls.state.ms.us/2012/pdf/history/SB/SB2162. xml.

. The chancery court correctly pointed out that Raybon and Holden were not deprived of due process. Therefore, there was no due process hearing, and none was needed, be- . cause this case did not deal with the recall of a previously issued certificate, nor did Ray-bon and Holden have a property interest in their application for certification.

. See also Board's Manual, Chapter 1, Section 101.02, http://www.sos.ms.gov//ACProposed/ 00013666b.pdf.

. The manual states that the full-time basic course curriculum is 400 hours and the part-time course is 200 hours, http://www.sos.ms. gov//ACProposed/00013666b.pdf (p. 61-64). Once applicants who are eligible for certification successfully complete the Board-approved basic-training course, and are approved by the Board, the staff will distribute certificates. Id. at 22 (Chapter 1, Section 102.04(d) & 102.5). Certification based on equivalency training can include training received from other federal agencies, including the military. Id. at 88 (Chapter 8, Section 101.03(1)). “Applicants may also qualify for an alternative basic course equivalency based on experience, education and training” based on a point system. Id. (Chapter 8, Section 101.03(2)). The Board states neither Raybon nor Holden qualified under the points method.