Tom S. Lee, UNITED STATES DISTRICT JUDGE
This cause is before the court on the motion of defendant State of Mississippi, Office of the State Auditor (OSA), to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and (7), or, in the alternative, for summary judgment pursuant to Rule 56. Plaintiffs Christopher Hooper, Donnie Cox-Powell, Diane Pimpton, James Farmer, Donnell Wiggins and Gregory Braggs, Sr. have responded in opposition to the motion. The court, having considered the memoranda of authorities submitted by the parties, together with attachments, concludes that this case should be dismissed for the reasons that follow.
Plaintiffs are current and former aldermen for the Town of Tutwiler, Mississippi. Following a May 2017 demand on them by OSA to repay nearly $80,000 in salaries allegedly overpaid to the Town's part-time police officers in violation of state law, plaintiffs filed the present action in the Circuit Court of Hinds County, Mississippi, seeking to enjoin OSA from collecting these monies from them. In their complaint, plaintiffs allege that the police officers' salaries were properly paid in compliance with, and as mandated by federal law, and specifically, the minimum wage provision *728 of the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201 et seq. They further allege that the state statute on which OSA bases its demand for payment, Mississippi Code Annotated § 45-6-3(d), as interpreted and/or applied by the State, is unenforceable, invalid and void as it conflicts with, or is preempted by the FLSA. They thus seek to enjoin enforcement of § 45-6-3(d), and by implication, to enjoin OSA's collection of the alleged salary overpayments.[1] OSA removed the case to this court on the basis of federal question jurisdiction under 28 U.S.C. § 1331,[2] and a week later, it filed the present motion to dismiss, or in the alternative, for summary judgment.
State Law
The present controversy centers on Mississippi laws concerning certification and compensation of law enforcement officers. In 1981, the Mississippi Legislature enacted the Law Enforcement Officers Training Program (the Act), set forth in Mississippi Code Annotated §§ 45-6-1 through -19. The Act established the Board on Law Enforcement Officer Standards and Training (BLEOST), Miss. Code Ann. § 45-6-5, and empowered BLEOST to establish minimum standards for employment, training, and education of law enforcement officers, and, further, to certify persons as being qualified to be law enforcement officers. See Miss. Code Ann. §§ 45-6-5, -7.[3] . See Miss. Dept. of Public Safety, Office of Standards & Training v. Raybon, 138 So.3d 220, 223 (Miss. Ct. App. 2014). Under the Act, all law enforcement officers, full-time and part-time, must be properly certified as qualified by BLEOST.[4] To become certified, all full-time and part-time law enforcement officers must successfully complete required training, prescribed by BLEOST in its Professional Certification Policy and Procedures Manual. See BLEOST Prof'l Certification Policy and Procedures Manual, Ch. 1, § 101.04. The training for full-time and part-time officers encompasses the same subject matter and skills, but the training program for full-time officers is more rigorous, e.g., requiring *729 400 hours of training compared to the 200 hours of training required for certification as a part-time officer. Id. Ch. 102.10.
Mississippi Code Annotated § 45-6-3 defines "full time" law enforcement officer to mean "any person who is receiving gross compensation for his duties as a law enforcement officer of Two Hundred Fifty Dollars ($250.00) or more per week or One Thousand Seventy-five Dollars ($1,075.00) or more per month." Miss. Code Ann. § 45-6-3(c). The statute defines "part-time" law enforcement officer as "any person who is performing such duties at any time whether or not they receive any compensation for duties as a law enforcement officer provided that such compensation is less than Two Hundred Fifty Dollars ($250.00) per week or One Thousand Seventy-five Dollars ($1,075.00) per month." Id. § 45-6-3(d). Thus, a law enforcement officer is either full-time or part-time, not according to how many hours the officer works, but rather according to how much the officer is paid.
Pursuant to Mississippi Code Annotated § 45-6-17, "[a]ny full- or part-time law enforcement officer who does not comply with the provisions of this chapter (regarding, inter alia , certification) ... shall not be authorized to exercise the powers of law enforcement officers generally, and particularly shall not be authorized to exercise the power of arrest." Miss. Code Ann. § 45-6-17(1) (parenthetical added). This statute further provides that:
(2) Any state agency or political subdivision that employs a person as a full- or part-time law enforcement officer who does not meet the requirements of this chapter, or who employs a person whose certificate has been suspended or revoked under provisions of this chapter, is prohibited from paying the salary of such person, or providing any public monies for the equipment or support of the law enforcement activities of such person and any person violating this subsection shall be personally liable for making such payment.
Id. § 45-6-17(2). Mississippi Code Annotated § 31-7-57 provides for the recovery of unauthorized payments by public officials, stating:
(1) Any elected or appointed public officer of ... a governing authority ... who appropriates or authorizes the expenditure of any money to an object not authorized by law, shall be liable personally for up to the full amount of the appropriation or expenditure as will fully and completely compensate and repay such public funds for any actual loss caused by such appropriation or expenditure, to be recovered by suit in the name of the governmental entity involved, or in the name of any person who is a taxpayer suing for the use of the governmental entity involved, and such taxpayer shall be liable for costs in such case. In the case of a governing board of an agency or governing authority, only the individual members of the governing board who voted for the appropriation or authorization for expenditure shall be liable under this subsection.
...
(5) Any sum recovered under the provisions hereof shall be credited to the account from which such unlawful expenditure was made.
Miss. Code. Ann. § 31-7-57. See also Miss. Code Ann. § 25-1-17 ("The bonds of all public officers and public employees required to give bond shall be made payable to the state, and shall be put in suit in the name of the state for the use and benefit of any person injured by the breach thereof.").
*730 Facts
It is undisputed that between 2013 and 2017, the plaintiffs authorized payments in excess of $250 per week/$1,075 per month to the Town of Tutwiler's certified part-time law enforcement officers. Apparently at some point in 2016, this came to the attention of OSA, which began an investigation of a claim that the Town's part-time police officers were overpaid, in violation of § 45-6-3(d). Around the same time, the Town's mayor and attorney evidently began looking into the matter as well.[5] In so doing, they determined that BLEOST has taken the position that while § 45-6-3(d) strictly limits compensation of part-time officers to $250 per week/$1,075 per month, there is no limit to the number of hours they can work; but, if they work any hours beyond the statutory salary cap, they must do so without compensation.[6]
In May 2017, OSA, having concluded that plaintiffs had in fact authorized payments in excess of $250 per week/$1,075 per month to certified part-time officers, sent each of the plaintiffs a demand for payment, for the use and benefit of the Town of Tutwiler, of the salary overpayments to part-time officers for the time period covering March 2013 through February 2017 totaling $79,253.30.[7] OSA contemporaneously submitted proofs of loss to *731 Travelers Insurance, the surety on plaintiffs' public officials bonds.
On July 11, 2017, plaintiffs filed the present action against OSA in state court seeking to enjoin enforcement of § 45-6-3(d), as interpreted by the State (i.e., BLEOST), so as to foreclose OSA from collecting on its demand to recover the alleged salary overpayments.[8] In their complaint, plaintiffs do not deny that they paid a number of police officers more than $250 per week/$1,075 per month, notwithstanding that those officers were only certified as part-time officers. Plaintiffs contend that in so doing, they acted in conformity with federal law and also with state law, as written. Their reasoning, as the court understands it, is as follows: The Town of Tutwiler has a statutory duty to provide sufficient police protection[9] ; plaintiffs have scheduled the Town's officers, including part-time officers, to work the number of hours reasonably required to fulfill that duty; the Town of Tutwiler's personnel policy defines a part-time employee as one who works less than 40 hours per week; state law imposes no limit on the number of hours a part-time officer may work; under the FLSA, the Town is required to pay officers at least the federal minimum wage of $7.25 per hour for every hour worked[10] ; and therefore, plaintiffs violated *732 neither federal nor state law in scheduling part-time officers to work 39 hours a week and compensating them for these hours at the federal minimum wage, with the result that the officers were paid more than $250 per week/$1,075 per month. Plaintiffs assert, though, that the State, through BLEOST, has issued a "directive" that plaintiffs not compensate the Town's part-time officers more than $250 per week/$1,075 per month, regardless of the number of hours they work; and they claim that this directive is based on an erroneous interpretation of § 45-6-3(d) which conflicts with the requirements of the FLSA[11] and which is thus preempted.
Analysis
"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20, 129 S.Ct. 365, 374, 172 L.Ed. 2d 249 (2008).[12]
Plaintiffs do not appear to contend that there is any inherent conflict between the requirements of the FLSA and Mississippi Code Annotated § 45-6-3(d), as written. However, they allege that BLEOST has "interpreted" and "enforced" § 45-6-3(d)"not to restrict the amount of hours part-time law enforcement officers can work" and to allow part-time law enforcement officers to work "without compensation." Plaintiffs thus allege that, "[a]s interpreted and, subsequently, enforced, § 45-6-3(d) is unenforceable, invalid and void because it conflicts with the federal minimum wage requirement...."
The Supremacy Clause of the Constitution states that the laws of the United States "shall be the supreme Law of the Land...." U.S. CONST. art. VI, cl. 2. Under this clause, Congress has the power to preempt state law. See Crosby v. Nat'l Foreign Trade Council, 530 U.S. 363, 372, 120 S.Ct. 2288, 147 L.Ed. 2d 352 (2000). Generally, there are three types of federal preemption: express preemption, field preemption, and conflict preemption. Express preemption occurs when Congress expresses an intent to preempt state law in the language of a statute. Pacific Gas & Elec. Co. v. State Energy Resources Conservation & Dev. Comm'n, 461 U.S. 190, 203, 103 S.Ct. 1713, 75 L.Ed. 2d 752 (1983). Field preemption, a type of implied preemption, occurs when Congress intends to fully occupy a field of regulation. Fidelity Federal Savings and Loan Ass'n v. de la Cuesta, 458 U.S. 141, 153, 102 S.Ct. 3014, 73 L.Ed. 2d 664 (1982). Conflict preemption occurs when "it would be 'physically impossible' for a private party to comply with both federal and state law," or when "the law 'stand[s] as an obstacle to the accomplishment and execution *733 of the full purposes and objectives of Congress.' " Empacadora de Carnes de Fresnillo, S.A. de C.V. v. Curry, 476 F.3d 326, 334 (5th Cir. 2007) (quoting Planned Parenthood of Houston & Se. Tex. v. Sanchez, 403 F.3d 324, 336 (5th Cir. 2005) ); see also Geier v. American Honda Motor Co., 529 U.S. 861, 873, 120 S.Ct. 1913, 146 L.Ed.2d 914 (2000) (explaining that preemptive obstacles go by various names, such as " 'conflicting; contrary to; ... repugnance; difference; irreconcilability; inconsistency; violation; curtailment; ... interference,' or the like.").
In this case, plaintiffs are asserting conflict preemption. However, this claim fails as a matter of law because it is not physically impossible for plaintiffs to comply with both the FLSA and state law regarding compensation of part-time police officers, and also because the challenged state statute does not stand as an obstacle to realizing the FLSA's objective of protecting covered workers by ensuring that they receive a minimum wage and overtime compensation. See Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 739, 101 S.Ct. 1437, 1444, 67 L.Ed. 2d 641 (1981) (purpose of enacting "was to protect all covered workers from substandard wages and oppressive working hours") (citing 29 U.S.C. § 202(a) ). It follows that plaintiffs have no likelihood of success on the merits of their claim that the state law at issue is preempted by FLSA and hence invalid and unenforceable.[13]
Plaintiffs' theory of preemption is that § 45-6-3(d), as allegedly "enforced" by the State, through BLEOST, conflicts with the FLSA's minimum wage provision by requiring plaintiffs to work part-time officers without compensation. However, state law does not require this. It is true that § 45-6-3 does not expressly limit the number of hours a part-time police officer can work. It does, however, strictly limit the amount of pay an officer may receive and still be classified as part-time. And, since the FLSA requires that officers be paid the federal minimum wage of $7.25 per hour, then § 45-6-3, in conjunction with the FLSA, does effectively limit the number of hours an officer can work and still be considered part-time.[14]
The court acknowledges that BLEOST appears to have interpreted state law to permit part-time officers to work without compensation.[15] Obviously, plaintiffs, as *734 they correctly point out, "cannot both work the part-time officers without compensation ... and, at the same time, pay the part-time officers the required minimum wage under federal law." However, state law, even as interpreted by BLEOST, merely permits , and does not require , that officers work without compensation or for less than the federal minimum wage. What the FLSA requires is that covered employees be paid the federal minimum wage of $7.25 per hour. And what state law requires-and all that it requires-is that part-time officers not be paid more than $250 per week or $1,075 per month. State law does not require plaintiffs to schedule part-time officers to work more hours than would result in their being paid over $250 a week or $1,075 a month when compensated at the rate of $7.25 per hour.
Plaintiffs deny that they can simultaneously comply with the FLSA and § 45-6-3(d) and fulfill their statutory duty to provide sufficient police protection. They complain that the state statute at issue "places and placed a severe and undue burden" on them because they "cannot place ... officers on duty after $1,075.00 unless [they place] said officers on duty without compensation in violation of [the FLSA]." That simply is not true. Even assuming plaintiffs are obligated to provide a certain minimum level of police protection, there is no requirement that they satisfy that obligation by over-scheduling certified part-time officers. They have other options available to them which do not involve a violation of either the FLSA or state law. They can hire more officers, part-time or full-time; or, if that is not feasible,[16] they can take the necessary steps to have the part-time officers timely attain the required certification as full-time officers.[17] Plaintiffs may find it difficult to comply simultaneously with state and federal law, but that does not mean that it is "physically impossible" to do so or that there is any conflict between the two.[18]
For these reasons, the court concludes that plaintiffs' claim that the FLSA preempts state law fails as a matter of law.
*735 Accordingly, it is ordered that defendant's motion for summary judgement is granted and plaintiffs' complaint is dismissed with prejudice.
A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.
SO ORDERED this 21st day of November, 2017.

Plaintiffs' complaint is styled "Petition for Preliminary and/or Permanent Injunction," but it is unclear precisely what relief they seek. The complaint includes only one count, by which plaintiffs purport to seek a "preliminary injunction" enjoining the State Auditor "from collecting the demand and interest in this matter pending the resolution of this action...." The resolution they appear to seek in this action is a determination that they do not owe the sums demanded because the state statute at issue is "unenforceable, invalid and void" as "interpreted and enforced."

See Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96 n.14, 103 S.Ct. 2890, 77 L.Ed. 2d 490 (1983) ("A plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve").

Mississippi Code Annotated § 45-6-7 authorizes BLEOST to:
(a) Promulgate rules and regulations for the administration of this chapter....
(b) Establish minimum educational and training standards for admission to employment or appointment as a law enforcement officer or a part-time law enforcement officer: (i) in a permanent position; and (ii) in a probationary status.
(c) Certify persons as being qualified under the provisions of this chapter to be law enforcement officers or part-time law enforcement officers.
...
Miss. Code Ann. §§ 45-6-7.

See BLEOST Prof'l Certification Policy and Procedures Manual, Ch. 1, § 101.04 ("Individuals who meet both the definition of a law enforcement officer in 101.03 ... and who meet the minimum employment guidelines are eligible to be employed as a law enforcement officer.").

The parties do not explain when or why this issue first arose. Defendant states that it began an investigation into a claim that the Town's part-time officers were overpaid, but it does not say what prompted the investigation or when it began. Plaintiffs had been paying certified part-time officers in excess of the statutory cap in § 45-6-3(d) since 2013, yet Tutwiler's mayor and the Town attorney state that "[i]n or about August 2016, an issue arose regarding the payment of part-time police officers." It is unclear whether this became "an issue" at that time because of OSA's investigation or for some other reason.

In February 2016, BLEOST issued a Memorandum "RE: Full-Time/Part-Time Officer" which stated, in part:
... A part-time certified officer is not restricted to the amount of hours worked and may work without compensation. A part-time officer must be compensated less than two hundred fifty dollars ($250.00) per week or one thousand seventy-five dollars ($1,075.00) per month. State law does not provide any exception to the compensation requirements.... (emphasis added).
Tutwiler Mayor Nichole Harris states in an affidavit that after the issue arose regarding payment of part-time officers, she contacted Robert Davis, Director of the Office of Standards and Training and a staff member of BLEOST, who informed her that under § 45-6-3(d), there is no limit on the number of hours part-time officers can work but they cannot be paid over $1,075 under any circumstances. The Town's attorney, Renetha Frieson, states in an affidavit that she contacted Davis, who reiterated this, and further, in response to her expressed concerns regarding federal minimum wage law, stated that there were no exceptions to the limit on part-time officer pay and that the officers would have to work without compensation beyond $1,075. Mr. Davis denies having said this.
Ms. Frieson states that after her conversation with Davis, she sought an opinion from the Mississippi Attorney General's Office, which issued an official opinion in February 2017 that § 45-6-3(d) operates as an absolute limit on the amount a municipality may compensate a part-time officer, and that if a part-time officer's compensation increases above the weekly or monthly amounts set forth in § 45-6-3, he would become a full-time officer, and, within a reasonable time period after being reassigned to full-time status, he would be required to receive additional training as required by BLEOST to become certified as a full-time officer.

This amount was prorated as follows:
Donnell Wiggins $15,830.21 Donnie Powell 13,886.69 Diann Pimpton 15,965.89 Christopher Hooper 16,188.06 James Farmer 16,188.06 Gregory Braggs 1,194.39

On May 30, 2017, the Board of Aldermen of the Town of Tutwiler filed an action against OSA in Hinds County Circuit Court making the same allegations as are made herein. OSA removed that action on the basis of federal question jurisdiction, see Bd. of Aldermen of the Town of Tutwiler v. Office of the State Auditor of the State of Miss., et al., No. 3:17CV544 (S.D. Miss.), and it has since filed multiple motions to dismiss. Plaintiffs herein have asked to consolidate this case with that prior action. Their request is denied.

See Miss. Code Ann. § 21-21-3 ("The governing authorities of municipalities shall have the power and authority to employ, regulate and support a sufficient police force or night marshals, to define the duties thereof, and to furnish and supply all suitable and necessary equipment therefor."); Op. Atty. Gen. No. 2008-00464, Pace, August 29, 2008, 2008 WL 4140520 (pursuant to § 21-21-3, a municipality has a duty to provide sufficient police protection for the municipality; such protection may be provided in various ways at the discretion of the municipal governing authorities).

See 29 U.S.C. § 206 (establishing minimum wage of $7.25 for covered employees); Garcia v. San Antonio Metro. Transit Auth., 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed. 2d 1016 (1985) (holding that FLSA applies to employees of state and local governments).

Plaintiffs further declare that "the State's act of issuing the demand against [them] demonstrates that [the State] required that the part-time officers not be compensated for time worked."

It is unclear whether plaintiffs seek (or intended to seek) a permanent injunction or only a preliminary injunction. The central distinction between the two is that to secure a permanent injunction, "the plaintiff must show actual success on the merits rather than a mere likelihood of success." See Hinton v. Dick's Sporting Goods, Inc., No. 2:13CV237-KS-MTP, 2013 WL 6384601, at *2 (S.D. Miss. Dec. 6, 2013) (citing Winter v. Natural Res. Def. Council, 555 U.S. 7, 32, 129 S.Ct. 365, 172 L.Ed. 2d 249 (2008) ). As a matter of law, plaintiffs can show neither.

Because the court concludes plaintiffs cannot succeed on the merits of their preemption claim, it is unnecessary to consider whether they could establish the other requisites for injunctive relief.

The FLSA and § 45-6-3, collectively, establish an effective maximum work week for a certified part-time law enforcement officer of 34.50 hours per week for an officer being paid the federally mandated minimum wage of $7.25. As defendant notes, the FLSA expressly permits a state to establish a maximum work week that is fewer than 40 hours. See 29 U.S.C § 218(a) ("No provision of this chapter ... shall excuse noncompliance with any Federal or State law or municipal ordinance establishing ... a maximum work week lower than the maximum workweek established under this chapter....").

This interpretation may well be inconsistent with the FLSA, which would seem to prohibit officers from working without compensation (or for less than minimum wage). While the FLSA's minimum wage mandate applies to "employees", the FLSA includes a volunteer exemption, which states that the term "employee" "does not include any individual who volunteers to perform services for a public agency which is a State, a political subdivision of a State, or an interstate governmental agency, if ... (ii) such services are not the same type of services which the individual is employed to perform for such public agency. " 29 U.S.C. § 203(e)(4)(A)(ii) (emphasis added). The Department of Labor has explained that
people are allowed to volunteer their services to public agencies and their community with but one exception-public sector employers may not allow their employees to volunteer, without compensation, additional time to do the same work for which they are employed. There is no prohibition on anyone employed in the private sector from volunteering in any capacity or line of work in the public sector.
http://www.dol.gov/elaws/whd/flsa/docs/volunteers.asp (last visited Nov. 21, 2017)(emphasis added).

Plaintiffs allege that the pool of available talent in the Town of Tutwiler is limited, and that despite their best efforts, they have been "unable to hire enough qualified, competent police officers ... to fill positions within the police department...."

In fact, plaintiffs tacitly acknowledge that they can comply with both the FLSA and state law, as they note in their complaint that they have "recently voted to no longer hire part-time officers in the Town...."

Notwithstanding that §§ 31-7-57 and 45-6-17(2), by their terms, provide for the imposition of personal liability against public officials who authorize payment of public monies in violation of state law, plaintiffs argue in their response that OSA's demand against them in their individual capacities is a "sham" since the challenged salary payments were made or authorized by them in their official capacities. They also argue that defendant's actions are a "political scam" or "political scandal" because the mayor was equally responsible for the challenged payments to the officers and yet defendant has made no demand for payment by the mayor or claim on her bond. And, plaintiffs argue that they should not be held liable for any overpayments since they acted in good faith. None of this is material and hence does not preclude summary judgment since plaintiffs' claim for injunctive relief in the complaint is based solely on their allegation that § 45-6-3(d), as allegedly interpreted and applied/enforced by the State, is unenforceable, invalid and void because it conflicts with the FLSA.